Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
Telephone: (208) 724-2617
Facsimile: (208) 906-8663
chd@fergusondurham.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SKYLER FRANKS,<br><br>               Plaintiff,<br><br>v.<br><br>JESSYCA TYLER; DAVID RILEY;<br>RANDY VALLEY; McKAYLA KUNZ;<br>and JOHN OR JANE DOES Nos. 1-5,<br>               Defendants. | Case No.  1:24-cv-148<br><br>**CIVIL RIGHTS COMPLAINT**<br>**42 U.S.C. § 1983**<br><br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

Skyler Franks, a former Idaho prisoner, seeks relief for injuries that he suffered

while he was in the custody of the Idaho Department of Correction.

For nearly a year, Franks had gastrointestinal pain, itching, nausea, unremitting

diarrhea, and blood leaking from his rectum. Yet prison medical providers

1

unreasonably delayed testing and treatment while he suffered these symptoms. When they eventually discovered that Franks had food allergies, they again dragged their feet before ordering the kitchen staff to provide Franks with an allergen-free medical diet. Still, that didn't work, and when Franks' symptoms persisted and he complained, prison officials refused to give him a diet without allergens or even to investigate the matter. In his final months, Franks returned to the medical providers again and again for help, but they ignored him.

Franks suffered that entire year with intolerable pain and humiliation, risking infection, illness, or even death because of these defendants' deliberate indifference. He was released from custody in April of 2023. He has since had surgery to repair the serious damage to his anus.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction and venue over the subject matter of this complaint under 42 U.S.C. § 1983; 28 U.S.C. § 1331 and § 1343(a)(3); 28 U.S.C. § 2201 and § 2202; 28 U.S.C.§ 2283 and § 2284.

2.      Section 1983 authorizes civil actions for the "deprivation of any rights … secured by the Constitution and laws" against a party acting under color of state law. 42 U.S.C. § 1983.

## PARTIES

3.      Plaintiff Skyler Franks was a prisoner in the care of the Idaho Department of Correction until he completed his sentence and was released on April 14, 2023. He currently resides in Boise, Ada County, Idaho.

4.      At all relevant times, the following defendants were acting under color of state law.

5.      Defendant Jessyca Tyler is employed by the Idaho Department of Correction as its Dietary Services Manager. Ms. Tyler is responsible for overseeing the food service operations of all adult correctional institutions within IDOC. Mr. Franks notified her directly of his food allergies and his continuing suffering, and she refused to ensure that he was provided food that complied with his serious medical need, causing his injuries. She is sued in her individual capacity.

6.      Defendant David Riley was employed by IDOC as the Food Service Officer at the Idaho State Correctional Center. Among other duties, Mr. Riley was responsible for ensuring that medical diets that have been ordered by the contract prison medical providers for individual inmates are served as indicated. Mr. Riley was aware of Mr. Frank's medical dietary needs but did not ensure that his medical diet was implemented and served to him as ordered, causing his injuries. He is sued in his individual capacity.

3

7.      Defendant Randy Valley was the warden at the Idaho State Correctional Center during the relevant time. He is responsible for the care and custody of all inmates at ISCC. He was notified through the grievance process of Mr. Franks' pain and suffering from an improper diet that Warden Valley's kitchen staff was providing him, but Valley declined to investigate or correct the violation, causing Franks' injuries. Warden Valley is sued in his individual capacity.

8.      Defendant McKayla Kunz is a nurse who, on information and belief, was employed by Centurion of Idaho, LLC, and Centurion Health, Inc. Ms. Kunz was responsible for Mr. Franks' medical care and, as such, she was fulfilling a traditional state function. She ignored his health service requests for assistance after his symptoms did not abate when he had been prescribed a particular medical diet. She refused to amend the medical diet order. These failures caused Mr. Franks injuries. She is sued in her individual capacity.

9.      John or Jane Doe No. 1 is a presently unidentified Centurion employee who was responsible for ensuring that medical appointments were scheduled within a reasonable time. This Doe Defendant was fulfilling a traditional state function by providing medical care to Idaho's inmates. This Doe Defendant unreasonably delayed Mr. Franks' appointment to see a provider in the summer of 2022 for nearly two months after he complained of serious intestinal symptoms. This Doe Defendant is sued in his or her individual capacity.

4

10.     John or Jane Doe No. 2 is a presently unidentified Centurion employee who was responsible for ensuring that medical orders were carried out in a timely manner in the summer and fall of 2022. This Doe Defendant was fulfilling a traditional state function by providing medical care to Idaho's inmates. This Doe Defendant unreasonably delayed executing a medical provider's order that Mr. Franks be tested for food allergies for nearly two months. This Doe Defendant is sued in his or individual capacity.

11.     John or Jane Does No. 3, 4, and 5 are presently unidentified Centurion employees who were responsible for Mr. Franks' medical care as providers in early 2023 until he was released. They were filling the role of a traditional state function by providing medical care to Idaho's inmates. These Doe Defendants ignored Mr. Franks' repeated requests for help to amend his medical diet after his symptoms persisted. They are sued in their individual capacities.

## FACTS COMMON TO ALL CLAIMS

### Centurion Medical Providers Substantially Delay Testing and Treatment While Mr. Franks Suffers

12.     In 2022, Skyler Franks was serving the last year of his prison sentence at the Idaho State Correctional Center (ISCC).

13.     In the spring of that year, he began to experience severe gastrointestinal distress. His symptoms included pain, bloating, gas, heartburn, cramping, and frequent diarrhea.

5

14.     Also, after eating meals, Franks would experience itching, headaches, and nausea.

15.     In May of 2022, Franks sent a Health Services Request (HSR) to the Medical Unit, which is the form that prison residents must use to seek medical treatment. He requested an antacid.

16.     The medical providers at all relevant times were employed by Centurion of Idaho, LLC, which is a subsidiary of Centurion Health, Inc., a for-profit corporation that provides medical services to prisons and jails across the country.

17.     The antacid did not solve the problem, and his symptoms got worse. His diarrhea was so frequent that he began to bleed from his rectum.

18.     At that time, Centurion was experiencing rapid turnover at ISCC. Centurion of Idaho was aware of staffing shortages at the facility and that they were causing serious delays in treatment for ISCC residents. Yet the situation did not improve.

19.     On June 11, 2022, Mr. Franks sent another HSR to the on-site medical provider, again notifying the provider that he was experiencing an upset stomach, diarrhea, and heartburn.

20.     By then, it was becoming obvious to him that the food that the prison was serving him was causing his symptoms.

21.     Centurion Doe No. 1, currently unidentified to Mr. Franks, was responsible for ensuring reasonably prompt scheduling of appointments with a provider for serious health matters.

22.     Centurion Doe No. 1 unreasonably delayed Mr. Franks' appointment for almost two full months, causing him to continue to suffer. [1]

23.     On August 6, 2022, a Centurion medical provider saw Mr. Franks and finally ordered food allergy testing.

24.     Centurion Defendant Doe No. 2, also currently unidentified to Mr. Franks, was responsible for ensuring that medical testing that had been ordered would occur expeditiously, and yet he or she unreasonably delayed the test, causing Mr. Franks unnecessary pain and suffering.

25.     Mr. Franks blood was not drawn until September 27, 2022, almost two months after it was ordered and almost four months after he had alerted the medical unit of his serious symptoms.

26.     During those nearly four months, Mr. Franks continued to experience severe gastrointestinal pain and diarrhea. His anus was raw and excruciatingly painful. He was still bleeding from his rectum.

---

[1] The full names and identities of Centurion medical staff are typically shielded from prison residents, which prevents the residents from learning the identities of the individuals who are ostensibly their medical providers. Mr. Franks will amend the complaint, as necessary, once he learns the identities of any currently unidentified Doe Defendants.

27.     The lab results came back quickly on September 28, showing that Mr. Franks was allergic, in varying degrees, to corn, wheat, peanuts, and walnuts.

28.     In late October, a medical provider finally issued an order to ISCC kitchen administrators that Mr. Franks should be given a diet that did not contain any of those allergens.

### IDOC Food Service Officials Refuse to Provide a Medically Compliant Diet

29.     David Riley was the Food Service Officer at ISCC who received that medical order in the fall of 2022.

30.     Part of Mr. Riley's duties included ensuring that the food service at ISCC complied with the medical provider's orders regarding diets for individual prisoners.

31.     IDOC provides several different types of dietary menus, some of which are intended to address common medical dietary restrictions.

32.     But there is no flexibility in the IDOC menu plan for idiosyncratic yet serious medical dietary needs.

33.     Mr. Franks was put on one of the diet menu options that allegedly contained "no gluten, no diary, no peanuts, no soy, and no corn."

34.     Despite that, the kitchen staff continued to feed Mr. Franks meals that contained his allergens. His severe gastrointestinal symptoms did not ease.

35.     On information and belief, the "no gluten, no dairy, no peanuts, no soy, no corn" diet *contained* those allergens, regardless how IDOC described it.

36.     The kitchen staff also reused pots, pans, and cooking utensils that contained corn, wheat, or nuts and fed meals to Mr. Franks that had been prepared in that way.

37.     Moreover, kitchen staff routinely substituted items that were not on the "no gluten, no dairy, no peanuts, no soy, no corn" diet, such as providing Mr. Franks corn tortillas or side items with high-fructose corn syrup.

38.     In November 2022, Mr. Franks complained to David Riley both informally and formally through concern forms that he was continuing to experience severe gastrointestinal symptoms and that Mr. Riley was not complying with his medical diet order.

39.     Mr. Riley responded that Jessyca Tyler, IDOC's Dietary Services Manager, was ultimately responsible for menu options and that he had no authority to change them.

40.     Mr. Franks asked to see the ingredients in the no gluten, no dairy, no peanut, no corn diet. Mr. Riley refused to show them to Mr. Franks.

41.     Mr. Franks asked to see how his meals were prepared so he could see if his allergens were mixed into his meals.

42.     Mr. Riley refused to allow him to inspect meal preparation.

43.     Mr. Riley did no investigation or testing of the ingredients that were supposedly in Mr. Franks' medical diet meal plan to ensure that it did not, in fact, contain ingredients to which Mr. Franks was allergic.

44.     Mr. Riley did no investigation or testing to ensure that his staff was not cross-contaminating Mr. Franks' meals with his allergens from other sources.

45.     Mr. Riley did no investigation to ensure that his staff was not substituting restricted food in Mr. Franks' meals.

46.     Meanwhile, Mr. Franks continued to experience serious medical symptoms from his food allergies.

### Mr. Franks Grieves the Issue, But Receives No Relief

47.     In November 2022, Mr. Franks started the formal grievance process, notifying administrators at IDOC – including Mr. Riley, "ASM Owens," believed to be Administrative Support Manager Rhonda Owens, and Warden Randy Valley – that he was still being given a diet that contained his food allergens, which was continuing to make him sick.

48.     At each step, his grievance was denied.

49.     At the first step, Food Service Officer Riley shifted the blame to Mr. Franks, claiming that Mr. Franks must follow the medical diet that was picked from IDOC's menu selections.

10

50.     This response did not address the complaint, because Mr. Franks was informing Mr. Riley that the "medical" diet he was being served was still causing his allergic symptoms.

51.     Next, on appeal, Ms. Rhonda Owens responded that "if you wish to refuse a medically ordered diet that is provided to you for your health and safety reasons, you may do so in order to partake in an alternate selective diet offering."

52.     Again, like Mr. Riley's response, Ms. Owens' comment was not responsive to Mr. Franks' complaint and shifted the blame to him.

53.     Mr. Franks was <u>not</u> suggesting that he wanted to <u>refuse</u> a medical diet. He was instead suggesting that the diet that IDOC was providing him did <u>not</u> comply with his medical restrictions. Owens chose to ignore the core concern that he raised.

54.     Finally, Warden Valley responded similarly: "It is out intent to adhere to your medical diet restrictions. And we believe we are currently meeting these restrictions. It is difficult to respond regarding your concerns without specific items listed that you believe do not meet the restrictions."

55.     Food Service Manager Riley and Warden Valley each had a responsibility to ensure that Mr. Franks was not fed allergens that made him seriously ill and caused his suffering.

56.    Riley and Valley each had the authority to investigate Mr. Frank's complaint and order an alternative meal plan, even an individualized one, that would comply with his medical restrictions.

57.    Each failed to take any of these steps.

### The Dietary Services Manager Refuses to Help

58.    Mr. Franks next turned to Jessyca Tyler, the Dietary Services Manager for all adult IDOC institutions.

59.    Over the course of many weeks, Mr. Franks sent numerous concern forms to Ms. Tyler, informing her that Mr. Riley continued to feed him a diet that caused allergic reactions.

60.    Ms. Tyler responded that the diet that he was on – the no gluten, no dairy, no peanut, no corn, and no walnut diet – had been reviewed by a medical professional (someone named "Valley"), and that Valley had approved it as not containing any of the allergens listed.

61.    What Ms. Tyler did not say is that Mr. Valley, believed to be Ryan Valley, had not been employed for IDOC or the medical provider for at least five years.

62.    That plan, therefore, had not been tested in five years.

63.    Nor did Ms. Tyler conduct a fresh investigation to ensure that the diet complied with his dietary restrictions.

64.    She did not order new testing to see if the allergens were in the food.

65.     She did not order any testing to compare the ingredients listed to the content of the food on that menu plan.

66.     On information and belief, Ms. Tyler also did not conduct an on-site investigation to ensure that Mr. Riley's kitchen staff was not cross-contaminating Mr. Frank's meals, or to determine whether it was substituting foods that contained allergens, as Mr. Frank's had claimed.

67.     Nor did Ms. Tyler simply instruct Mr. Riley to make an individualized menu plan for Mr. Franks that would assuredly not contain any of his allergens. Such food, which includes non-processed meats and vegetables, is readily available.

68.     Ms. Tyler simply relied on the outdated opinion of a long-gone medical official that the menu was consistent with Mr. Frank's dietary restrictions with no further inquiry and washed her hands of the problem.

69.     Mr. Franks continued to suffer. He continued to experience explosive diarrhea multiple times a day. He continued to bleed from his rectum.

70.     Mr. Riley, Warden Valley, and Ms. Tyler were aware of Mr. Frank's serious medical need.

71.     Each of these IDOC officials was aware that Mr. Frank's continued to suffer the same severe symptoms over several months despite allegedly being on a medical diet since November of 2022.

72.     Despite that knowledge, none of these officials did anything to alleviate Mr. Frank's suffering.

### Mr. Franks Turns Back to Centurion Providers, Who Ignore Him

73.     Starting around January of 2023, and continuing into the spring of 2023, Mr. Franks filed several HSRs with the medical provider, describing his increasingly severe symptoms in detail and asking for help in getting an appropriate medical diet.

74.     At that time, McKayla Kunz was a traveling nurse who filled in at ISCC because of short staffing at that institution.

75.     Ms. Kunz was one of the primary nurses for Centurion responsible for Mr. Franks' care. She was responsible for responding to HSRs.

76.     Ms. Kunz ignored Mr. Franks' HSRs, as did Centurion Defendant Does 3, 4, and 5, who are presently unidentified to Mr. Franks but who were also Centurion nurses or other medical providers that were responsible for Mr. Franks' care at that time. They did not schedule a sick call for him or follow up with his distressing requests for assistance.

77.      Finally, about 10 to 14 days before Mr. Frank's release date in April, Mr. Franks found a sympathetic medical provider, whom he knew by his first name of "Gio."

78.     Gio reviewed Mr. Franks' medical chart and went out of his way to order a medical diet that contained only deli meats and a few other fresh staples.

14

79.     During those two weeks, Mr. Frank's symptoms finally began to ease, but he still had severe rectal pain.

80.     He was released from prison on April 14, 2023.

81.     He visited the ER for rectal pain. He also saw a primary care physician, who referred him to the Digestive Health Clinic.

82.     A gastroenterologist determined that Mr. Frank's constant diarrhea had damaged his anal sphincter because of its natural tightening reaction.

83.     The doctor determined that Mr. Franks would need surgery to correct the damage.

84.     On July 23, 2023, Mr. Franks had surgery to correct the damage. He may need additional surgeries over time.

85.     Now that he has control of his own diet, he eats all fresh foods.

86.     As long as he does, he does not experience the gastrointestinal symptoms that he had while in prison.

87.     Yet Mr. Franks continues to experience the lingering effects of this injury, including pain, humiliation, mental anguish, and embarrassment.

88.     He now seeks relief from this Court.

**CLAIMS FOR RELIEF**

**Eighth and Fourteenth Amendments**

**42 U.S.C. § 1983**

**I.**

**<u>Cruel and Unusual Punishment – Prison Diet</u>**

**Defendants Jessyca Tyler, David Riley, and Warden Randy Blades were deliberately indifferent to a substantial risk of serious harm to Mr. Franks.**

89.     Mr. Franks incorporates all previous paragraphs.

90.     Defendants Tyler, Riley, and Blades acted under color of state law;

91.     Mr. Franks faced a substantial risk of serious harm;

92.     Defendants Tyler, Riley, and Blades were each deliberately indifferent to that risk; that is, they knew of the risk and disregarded it by failing to take reasonable measures to address it; and

93.     These defendants' failure to act caused Mr. Franks harm.

**II.**

**<u>Cruel and Unusual Punishment – Delay and Denial of Medical Care</u>**

**Centurion Defendant John or Jane Does No. 1 - 5 and McKayla Kunz were deliberately indifferent to Mr. Franks serious medical need.**

94.     Mr. Franks incorporates all previous paragraphs.

95.     These defendants were serving a traditional state function and, as such, were acting under color of state law;

96.     Mr. Franks faced a serious medical need;

97.     These defendants each were deliberately indifference to that medical need; that is, each defendant knew of it and disregarded it by failing to take reasonable measures to address it; and

98.     These defendants' failure to act caused harm to Mr. Franks.

## PRAYER FOR RELIEF

A.     WHEREFORE, Plaintiff Skyler Franks respectfully prays this Court enter judgment granting him the following:

B.     A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

C.     Compensatory damages against each defendant in the amount to be determined at trial, both jointly and severally, against each defendant, for serious and often excruciating pain, suffering, unnecessary physical injury and debility, and mental anguish.

D.     Punitive damages against each defendant in the amount to be determined at trial.

E.     A jury trial on all triable issues.

F.     Attorney fees, costs, and expenses under 42 U.S.C. § 1988 and all relevant

17

statutes and rules.

G.    Any additional relief this Court deems just, proper, and equitable.

Dated this 19th day of March, 2024.


/s/ Craig H. Durham
Craig H. Durham
Counsel for Plaintiff