Craig H. Durham
Idaho State Bar No. 6428
Ferguson Durham, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208) 724-2617
F: (208) 906-8663
chd@fergusondurham.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| SKYLER FRANKS,<br><br>     Plaintiff,<br><br> v.<br><br>JESSYCA TYLER, et al.,<br><br>     Defendants. | Case No. 1:24-cv-00148-DCN<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO CENTURION OF IDAHO AND DR. MURRAY YOUNG'S MOTION TO DISMISS (Dkt. 23)** |

Plaintiff Franks moved to amend his Complaint to add Defendants Centurion of

Idaho, Inc., and Dr. Murray Young on March 25, 2025. (Dkt. 14.) Franks lodged with his

motion the proposed Amended Complaint in both a redlined and a clean version. (Dkt.

1

14-4; 14-5.) On June 6, the Court granted the motion (Dkt. 17), and, per the Court's instructions, Franks filed the Amended Complaint as a standalone document on the docket on June 12. (Dkt. 19.)

The Centurion Defendants have now filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 23.) These Defendants argue that the Amended Complaint is untimely as to them and, alternatively, that Franks has failed to state a claim for relief against them. (Dkt. 23-1, pp. 8-16.) For the reasons that follow, the Court should deny the motion.

### GENERAL STANDARDS GOVERNING A MOTION TO DISMISS

A complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When addressing a motion to dismiss, a court must accept the plaintiff's material factual allegations as true and construe them in the light most favorable to plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). Still, a complaint must contain sufficient allegations to support a "facially plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570.) A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A defendant may also choose to file a motion to dismiss under Rule 12(b)(6) based on the running of the statute of limitations if that defense is apparent on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). But if the court must rely on evidence outside of the complaint to resolve the statute of limitations issue, then it converts the motion to one for summary judgment under Rule 56, and "all parties shall be permitted to present all material pertinent to the motion." *Id.*; *see also* Fed. R. Civ. P. 12(d).

### THE AMENDED COMPLAINT IS TIMELY AS TO THESE DEFENDANTS

#### A.    Standard of Law – Statute of Limitations

Federal civil rights actions arising in Idaho are governed by a two-year statute of limitations. Idaho Code § 5–219; *see also Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (holding that state statute of limitation for personal injury actions governs § 1983 actions), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The limitations period begins to run when a claim accrues. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993). When a claim accrues is governed by federal law, not state law, and conforms "in general to common-law tort principles." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under those principles, it is the standard rule

that accrual occurs when the plaintiff has a complete and present cause of action [and] ... knows or has reason to know of the actual injury." *See id.* (cleaned up). In § 1983 action in Idaho, then, a plaintiff has two years from when he has a complete and present cause of action to file in federal court.

**B.    The Filing Date is the Date Franks Filed his Motion to Amend**

Though Franks could find no Ninth Circuit precedent on the precise issue, the strong weight of authority is that the operative filing date of an amended pleading is the date on which a plaintiff files his *motion* to amend with an attached amended pleading, *not* the date on which a court grants the motion. *See, e.g., Mayes v. AT & T Info. Sys., Inc.,* 867 F.2d 1172, 1173 (8th Cir. 1989); *Moore v. State of Ind.,* 999 F.2d 1125, 1131 (7th Cir. 1993); *Rothman v. Gregor,* 220 F.3d 81, 96 (2d Cir. 2000). That is so because a plaintiff has no control over when a court may decide a motion to amend, which could remain pending for some time beyond the limitations period. *E.g., Villanueva v. Liberty Acquisitions Servicing, LLC,* 215 F. Supp. 3d 1045, 1058 (D. Or. 2016) (noting "many cases from around the country holding that '[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes.'").

The Centurion Defendants contend that the operative date for Franks's Amended Complaint is June 12, 2025, the date on which he followed the Court's order to file the

pleading as a stand-alone document. (Dkt. 23-1, p. 3.) But the operative date is actually March 25, 2025, the date on which Franks filed his motion and attached the proposed amended pleading. (Dkt. 14.)

That matters because two years before that date – on March 25, 2023 – Franks was still in the custody of the Idaho Department of Correction and was still subject to the continuing medical care of Centurion of Idaho, Inc., and its Regional Medical Director for Idaho, Dr. Murray Young. *See* Amended Complaint (Dkt. 19), ¶ 83 (Franks released from prison on April 14, 2023).

### C.    The Continuing Violations Doctrine Reaches Back to Spring of 2022

Nor is Franks limited to allegations arising just in the three weeks between March 25, 2023, and April 14, 2023 to support his claims against these Defendants.

In his Amended Complaint, Franks has instead alleged an ongoing and continuing harm by the Centurion Defendants from the spring of 2022 and extending until he was released in April of 2023, within the statute of limitations. He alleges that Centurion of Idaho, Inc., was chronically understaffed during that entire time period – with so much turnover that even IDOC officials did not know who was working at any given time – which was a Centurion policy, practice, or custom that resulted in unreasonable delay and an overall failure to treat Franks's serious and ongoing medical condition. *See, e.g.*, Amended Complaint at ¶¶ 13-29, 75-79, 101. Similarly, he alleges

5

that Dr. Young was the Regional Medical Director throughout that time and ultimately responsible for his medical care, and yet he ignored Franks's entreaties to fix his medical diet. *E.g.*, Amended Complaint, at ¶ 79.

These allegations show a continuing violation of his Eighth Amendment right to adequate medical care. The continuing violations doctrine "functions as an exception to the discovery rule of accrual allowing a plaintiff to seek relief for events outside of the limitations period." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (cleaned up). As the Ninth Circuit noted in *Bird*, the doctrine "is actually a conglomeration of several different ideas ... the essence of which is that when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." 935 F.3d at 746 (internal quotation marks and citations omitted). Though in *Bird* the Ninth Circuit noted that the Supreme Court has excluded from this doctrine cases in which the plaintiff alleges a "series" of related but *discrete* events, it retains life when the allegation involves, for instance, a continual unlawful act. *See id.*

The core of Franks's claim against Centurion and its Regional Medical Director is based on their *ongoing and systemic failure* to treat him, causing worsening damage, which these Defendants inflicted on him from the spring of 2022 until he was released from prison. This type of claim for inadequate prison medical care due to systemic

6

failure with a rotating cast of unidentified prison medical providers fits well within the continuing violation doctrine. *See, e.g., Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (finding that continuous violation doctrine applied to defendants' deliberate indifference for the span of time that prison officials were aware of plaintiff's injury and allegedly refused to treat it); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980) ("[T]he [arrestee's] allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.); *see also*, e.g., *Entsminger v. Aranas*, No. 3:16-cv-00555-MMG-WGC, 2021 WL 4394773, at \*9 (D. Nev. Sept. 24, 2021) (applying continuing violation doctrine where the plaintiff alleged numerous instances of denial of dental care and the last instance of alleged failure to treat fell within the two-year statute of limitations); *Gipbsin v. Kernan*, No. 2:12-cv-0556 GEB DAD P., 2015 WL 3993073, at \*3–4 (E.D. Cal. June 30, 2015) (denying motion to dismiss claim as time-barred because continuing violation doctrine applied to state prisoner's medical care claim).

Because the Amended Complaint was filed on March 25, 2025, and because the continuing violations doctrine extends to before March 25, 2023, this Court should find that the claims against both Dr. Young and Centurion of Idaho, Inc., are timely.

D.    **The Claim Against Dr. Young Relates Back**

Yet another reason that the Amended Complaint is timely, at least as to Dr. Young, is that Franks did not know that Dr. Young was involved in his care on this issue until discovery from the IDOC Defendants revealed that to be the case, and Franks alleged John Doe placeholders in his original Complaint.

Under Fed. R. Civ. P. 15(c)(1)(A), an amended pleading will relate back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back." *Id*. To answer that question, the Court must look to Idaho law that relates to unidentified Doe defendants. Idaho law allows an amended complaint designating the true name of a defendant to relate back to a complaint that included that defendant as a Doe "if it can be established that the amending party proceeded with due diligence to discover the true identity of the fictitious party and promptly moved to amend and serve process upon the previously fictitiously described party." *Regjovich v. First W. Invs., Inc.*, 997 P.2d 615, 620 (Idaho 2000).

Franks named five Centurion John and Jane Does in his original Complaint. He alleged that John or Jane Doe 1 was "a presently unidentified Centurion employee who was responsible for ensuring that medical appointments were scheduled within a reasonable time." (Dkt. 1, ¶ 9.) He named John or Jane Doe 2 as a "presently unidentified Centurion employee who was responsible for ensuring that medical orders

8

were carried out in a timely manner in the summer and fall of 2022." (*Id*. at 10.) And he

alleged that John and Jane Does 3, 4, and 5 were Centurion employees "responsible for

Mr. Franks' medical care as providers in early 2023 until he was released ... [t]hese Doe

Defendants ignored Mr. Franks' repeated requests for help to amend his medical diet

after his symptoms persisted." (*Id*. at ¶ 11.)

      Franks used Centurion Doe placeholders because he was unaware of the

identities of all those who were responsible for his care. *See* March 18, 2025 Declaration

of Skyler Franks (Dkt. 14-3), attached here as Exhibit A. He "submitted numerous HSRs

regarding [his] symptoms alleged in [his] Complaint. Centurion staff almost always

delayed in responding, if they responded at all." *Id*. at 6. When he was seen, he "was

examined by nurses and similar front-line providers" and he does "not recall being

examined by Regional Medical Director Dr. Murray Young." *Id*. at ¶ 7. According to

Franks, he "did not know [Young] was involved in making any decisions about my care

and diet until very recently." *Id*. Moreover, he has alleged that Centurion was

intentionally opaque regarding the identities of its providers: "[p]roviders were usually

not identified to prisoners beyond just their first names." *Id*. at ¶ 10. Dr. Young was

identified to Franks as being directly involved in his care through an email that Franks

received in discovery from the IDOC Defendants on or about February 28, 2025. *See*

March 25, 2025 Declaration of Craig H. Durham, attached as Exhibit B.

Franks exercised reasonable diligence in trying to discover the individual identities of his treating providers and filed the Amended Complaint within a reasonable time of his discovery. Franks's substitution of Dr. Young for a Centurion Doe Defendant, especially for Doe 3, 4, or 5, is timely under Idaho's relation back doctrine.[1]

## THE AMENDED COMPLAINT STATES CLAIMS ON WHICH RELIEF MAY BE GRANTED AGAINST THESE DEFENDANTS

The Centurion Defendants next argue that independent of the Court's resolution of the statute of limitations issue, Franks has failed to state any claim for relief against them. (Dkt. 23-1, pp. 8-16.) The Court should not be persuaded.

The Amended Complaint in this case is not some threadbare pleading full of speculative and conclusory material. It contains lengthy and detailed factual information about Franks's year-long odyssey to get someone – *anyone* – in a position of authority to help him relieve his debilitating symptoms related to his food insensitivities. He was consistently ignored, put-off, or threatened with punishment.

---

[1] Should the Centurion Defendants contest Franks's factual assertions in these declarations as to the statute of limitations issue, turning this into a motion for summary judgment, Franks respectfully requests that the Court first authorize discovery on the issue so that he has a full and fair opportunity to provide all evidence in support of his position.

The damage was so severe that he had surgery to his anus after he was released, and he still experiences serious effects.

Under the Eighth Amendment, Idaho has an obligation to provide medical care for those whom it punishes by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). It has delegated that responsibility to Centurion and its employees.

To state an Eighth Amendment medical care claim, a prisoner must allege facts showing "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104).

The prisoner starts by alleging  that he had a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Next, a prisoner must allege that a defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. A prison official or medical provider acts with deliberate indifference when he or she "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A prisoner can satisfy this, among other

ways, by "showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. A prisoner need not show his harm was "substantial," but "such a showing would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id*.

There can be little doubt that Franks has alleged that he was suffering from a serious medical need. He claimed that in the spring of 2022, he began to experience "severe gastrointestinal distress." Amended Complaint, at ¶ 14. That distress initially included "pain, bloating, gas, heartburn, cramping, and frequent diarrhea." *Id*.  And "after eating meals, Franks would experience itching, headaches, and nausea." *Id*. Over time, his symptoms progressed to where "[h]is anus was raw and excruciatingly painful. He was still bleeding from his rectum." *Id*. at ¶ 27. He then began to experience "explosive diarrhea multiple times a day." *Id*. at ¶ 71. He continued to bleed from his rectum. *Id*. Eventually, his "constant diarrhea had damaged his anal sphincter because of its natural tightening reaction." *Id*. at ¶ 85. The damage required surgical repair, which did not occur until after his release. *Id*. at ¶ 86.

Franks also has alleged sufficient facts, taken together with the reasonable inferences drawn in his favor from those factual allegations, to state claims that these Defendants were deliberately indifferent to that serious medical need.

As for Centurion of Idaho, Franks brings a claim under the theory liability for entities set out in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The elements of a "*Monell* claim" against Centurion are that (1) Centurion acted under color of state law and (2), if a constitutional violation occurred, a Centurion policy, practice, or custom was the moving force behind the violation. *See, e.g., Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (assuming that a *Monell* claim is available against a prison medical provider and setting out the elements of a claim).

Franks has alleged facts that meet the elements of a *Monell* claim. He contends that Centurion "is fulfilling a traditional state function of providing medical care for prison residents. Its policies, practices, or customs were the moving force behind the constitutional violations alleged in this case." Amended Complaint, at ¶ 9. More precisely, he alleges that Centurion "was experiencing rapid turnover at ISCC," and that it "was aware of staffing shortages at the facility and that they were causing serious delays in treatment for ISCC residents." *Id.* at ¶ 19. Throughout his Amended Complaint, he asserts significant delays in medical providers' responses to his health services requests – when they responded at all. He also alleges that Centurion of Idaho "was chronically understaffed, so much so that even IDOC officials were not up to date as to the identities of the medical staff at ISCC." *Id.* at ¶ 78. And he contends that "because of Centurion's policy, practice, or custom of not fully staffing its medical

providers to meet the needs of its patients, [he] continued to suffer." *Id*. He alleges again in his statement of the claim that "Defendant Centurion of Idaho, Inc., had a policy, practice, or custom that was the moving force behind the constitutional violation." *Id*. at ¶ 101.

"Inadequate staffing can create an objective risk of substantial harm in a prison setting that is sufficient to satisfy the objective prong of the deliberate indifference test." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1251 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). That is so because "having stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833.

In short, Franks has alleged that Centurion was a state actor, was chronically unstaffed, was aware of its staffing problems, and that its failure to fully staff the prison with medical providers caused him to "continue to suffer," and that this policy, practice or custom was the moving force behind the constitutional violation. He more than meets the basic requirements to state a claim against Centurion.

Similarly, Franks has stated a claim for relief against Dr. Young. As Centurion's Regional Medical Director, Dr. Young was a supervisory Centurion employee and,

according to the Amended Complaint, "was responsible for Mr. Franks' medical care." Amended Complaint, at ¶ 10. A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

Here, Franks alleges that in December of 2022, after he had complained about his ongoing symptoms, Jessyca Tyler consulted with Dr. Young in an email exchange about changing Franks's medical diet. *Id*. at ¶ 70. Dr. Young responded to "[k]eep doing what we are doing, we are not changing anything for 1 individual." *Id*. Franks claims that Dr. Young, among others, was "aware of [his] serious medical need" but "despite that knowledge" he and others did nothing to "alleviate Mr. Franks's suffering." *Id*. at ¶¶ 72, 74. Franks further claims that in the spring of 2023, he "turned back" to Centurion providers, including Dr. Young, who ignored his health service requests in which he continued to complain about his severe symptoms. *Id*. at ¶ 79. These are sufficient facts to state a claim against Dr. Young for an Eighth Amendment violation.

* * *

That brings us to the Centurion Defendants' final argument, which is that Franks's citation to the Fourteenth Amendment, without elaboration, is somehow a

15

cause for dismissal of a Fourteenth Amendment due process claim. (Dkt. 23-1, p. 16.)

Franks cited the Fourteenth Amendment in his statement of the claims because that is

the constitutional amendment through which the Eighth Amendment is incorporated

and made applicable to the states, including Idaho. *E.g.*, *Starr*, 652 F.3d at 1206 (framing

the claim as "unconstitutional conditions of confinement in violation of the Eighth

Amendment's prohibition against cruel and unusual punishment, as incorporated

through the Due Process Clause of the Fourteenth Amendment.") The claims against

these Defendants are based in the Eighth Amendment. There is no need to dismiss

anything on this ground.

## CONCLUSION

Plaintiff Franks respectfully asks the Court to deny the Centurion Defendants'

motion to dismiss.

SUBMITTED ON THIS 15th day of September 2025.

/s/ Craig H. Durham
Attorney for Plaintiff

16